Charles N. Guthrie (SBN 76644)
Attorney at Law
121 Broadway, Suite 531
San Diego, California 92101
Tel:  619-230-8598

Attorney for Defendant
Bernice Pelayo-Hernandez

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## (HON. WILLIAM Q. HAYES)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>BERNICE PELAYO-HERNANDEZ,<br><br>                    Defendant. | Case No. 08 CR 0972 - WQH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DISCOVERY AND LEAVE TO FILE ADDITIONAL MOTIONS**<br><br>Date:   May 19, 2008<br>Time:  2:00<br>Judge: William Q. Hayes |

COMES NOW defendant Bernice Pelayo-Hernandez, by and through counsel, and hereby respectfully submits the following memorandum of points and authorities in support of motion to compel discovery and for leave to file additional motions:

I

STATEMENT OF CASE AND FACTS

Bernice Pelayo-Hernandez is charged in a Three Count Indictment, all counts occurring

on March 25, 2008, Count 1, alleging violation of Title 8 USC 1324 (a)(1)(A)(ii) and (v)((II), intentionally or with reckless disregard transporting an illegal alien (Eduardo Reyes-Rodriguez) within the United States; Count 2, alleging violation of Title 8 USC 1324 (a)(A)(ii) and (v)(II), intentionally or with reckless disregard transporting an illegal alien (Ramon Vasquez-Cabrales) within the United States; Count 3, alleging violating of Title 8 USC 1324 (a)(1)(A)(ii) and (v)(II), intentionally or with reckless disregard transporting an illegal alien (Juan Carlos Yepez-Yepez) within the United States.

At around 9:57 p.m., March 25, 2008, Border Patrol Agents arrested Ramon Vasquez-Cabrales, after pulling up beside his vehicle after he stopped at a fenced gate after following him off of the Interstate 8, westbound freeway onto Buckman Spring Road. Agent Hill was able to see people moving under the tarp of the (F-150) Ford pick-up truck. Agent Western contacted the driver of the truck, Defendant Ramon Vasquez-Cabrales, and Agent Hill went to the passenger side observing the passenger, one subject on the floorboard and (7) individuals under the tarp in the bed of the truck. All of the subjects freely admitted being citizens and nationals of Mexico, present without documentation that would allow entry into the United States. All ten were arrested.

At approximately 11:00 p.m. March 25, 2008, Agent Pearson working the Border Patrol Checkpoint on Highway 94, in Jamul, California inspected a gold Dodge Intrepid with Bernice Pelayo-Hernandez, (this moving defendant) driving and the front seat passenger, (Co-defendant) Denise Pelayo-Hernandez. Bernice and Denise are sisters. Bernice had no drivers license or identification and was sent to secondary for further checks.

Investigation of border passing plates resulted in Defendant's statement that she had come from Tecate, Mexico as being inaccurate in that no license plate match was made within

the 72 hours before the stop. Further conversation ensued and Bernice told that she contacted a friend to work as a scout. Further she had been a scout before by driving to the Golden Acorn Casino and letting this individual know whether it was clear. On this date, both she, and her sister went to the Goden Acorn Casino and called "Ramon/Eduardo" to let him know it was clear. Bernice said she was never called back and assumed the smuggler was caught.

Agents from the Boulevard Station had made an arrest of an alien load (See Supra lines 4-12) and those agents came and arrested Bernice and Denise.

Thereafter Bernice Pelayo-Hernandez was given her Miranda rights and she made further statements regarding her culpability in the smuggling venture, as to leaving food (hamburgers) at a pay phone, and she was to be paid $200.00.

Denise Pelayo-Hernandez was advised of her Miranda Rights and told agents that her sister Bernice asked her to be a "scout" for the Border Patrol Checkpoint. Bernice purchased hamburgers and they drove out and dropped off hamburgers at a payphone at the Live Oak Springs Store.

Material witnesses, Reyes-Rodriguez, Yepez-Yepez, and Torres-Silva all said they were Mexican nationals and were paying from $1,300, to $1,500 to be smuggled into the United States. Vasquez-Cabrales was identified by Eduardo Reyes-Rodriguez as the driver of the load vehicle.

II

**POINTS AND AUTHORITIES**

In addition to discovery enumerated in the notice of motion and motion, defendant Bernice Pelayo-Hernandez submits further argument to compel the government to produce the discovery as requested and for additional discovery as discussed below.

A.     **MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS.**

Defense counsel has received some discovery in this case. As information comes to light, due to the government providing additional discovery in response to these motions or an order of the court, the defense may find it necessary to file further motions. It is therefore requested defense counsel be allowed the opportunity to file further motions based upon information gained through the discovery process.

B.     **MOTION FOR EXCULPATORY EVIDENCE.**

The government should be ordered to turn over to the defendant evidence relevant to the credibility of the government's witnesses, as well as evidence more directly related to the guilt or innocence of the defendant. It constitutes exculpatory evidence within the meaning of Brady v. Maryland (1963) 373 U.S. 83, and its progeny, which must be disclosed pursuant to the mandate of the Due Process Clause of the Fifth Amendments to the United States Constitution. See, Giglio v. United States (1972) 405 U.S. 150.

Defendant requests the disclosure requested herein be made well in advance of trial in order to permit him to adequately and fully prepare for his defense. The need for such advance disclosure has been frequently recognized and granted by the courts. (Citations omitted).

Defendant particularly requests the government be ordered to disclose or divulge to the defendant any and all of the following exculpatory information:

1.     The full record of arrest and/or criminal convictions of any prospective witness the government intends to call at trial of the above-captioned matter, and if a witness has been incarcerated pursuant to a conviction, records from any institution at which he or she was incarcerated.

2.     The full and complete statement of any and all promises, rewards and

inducements of any kind made by the government, its prosecutors or its agents, and/or by state law enforcement agents working in conjunction with government in this case, to induce or encourage the giving of testimony or information and made to any prospective witness whom the government intends to call at the trial of the above-captioned matter, and/or any person who assisted the government in its investigation of the above-captioned matter and/or testified before the Grand Jury.

3. Any evidence that may be used to impeach or discredit any witness the government intends to call at the trial of the above-captioned matter, including, but not limited to, inconsistent statements of a witness the government intends to call at the trial of the above-captioned matter, including, but not limited to, inconsistent statements of a witness or between witnesses, statements of bias or prejudice against the defendant by a witness, or admissions of poor memory by a witness.

4. A full and complete statement of any and all criminal cases pending against the witness the government intends to call in its presentation of its case-in-chief, regardless of whether or not these cases are the subject of a promise, reward, or inducement.

5. A full and complete statement of any and all criminal conduct the government has knowledge of as having been committed by any witness it intends to call in its case-in-chief and regarding which there has been no conviction, regardless of whether or not these crimes are presently the subject of a pending criminal charge.

6. Whether or not the government has requested or authorized the payment of any sums of money to any informant who participated in the investigation that generated the above-captioned indictment or to any prospective witness, and whether or not the government has knowledge as to whether or not any state agency or law enforcement officer has requested,

authorized, or transmitted any sum of money to any of the above-mentioned individuals.

7. Any logs, records, or other documents relating to the payments of any sums of money to any individual set forth in paragraph 6 and the source of any such payments.

8. What, if any, promises, rewards, or inducements were offered the defendant at any time in order to elicit statements, if any, from him.

9. The identity of any and all witnesses who have been offered immunity by the government.

10. Any evidence that might demonstrate the defendant was not involved in any of the illegal activity as charged in the above-captioned indictment.

11. Any and all records and information revealing prior misconduct or bad acts attributed to any witness.

12. Any and all threats, express or implied, direct or indirect, or other coercion made or directed against any witness, including, but not limited to: (a) promises of non-prosecution of said witnesses, friends, or acquaintances for any offenses; (b) indications made to the witness that persons in certain categories or situations are not ordinarily made targets of a criminal prosecution; (c) aid or assistance to the witness in procuring a job or similar benefit; (d) forgiveness of debts or potential debts, including tax liabilities of a witness; (e) promises that cooperation will be brought to the attention of judicial or parole or probation authorities for the benefit of the person providing the cooperation, or for any other persons acquainted with the person having cooperation; (f) promises that non-cooperation will be brought to the attention of judicial or parole or probation authorities, or that recommendations for prosecution will be influenced in some way by a failure to cooperate.

13. Any criminal prosecutions, investigations, or potential prosecutions pending or

that could be brought against any witness.

14. Any probationary, parole, deferred prosecution, or custodial status of any witness.

15. Any civil, tax court, court of claims, administrative, or any pending legal dispute or transaction in which any witness is involved, and in which any state or federal government has any real, apparent, or perceived influence.

16. The existence and identification of each occasion on which any witness has testified before any court, Grand Jury, or other tribunal or body or otherwise provided a narrative account of the investigation or the facts allegedly involved in this case to either state or federal officials, whether in this state or in any other state.

17. The existence and identification of each occasion on which each witness who was or is an informer, accomplice, co-conspirator or expert has testified before any court, Grand Jury, or tribunal or body or otherwise provided a narrative account of the investigation of the facts allegedly involved in this case to state or federal officials whether in this state or in another state.

18. Any and all personnel files for any witness, the existence and identity of all federal, state, and local government files for any witness, and the existence and identity of all official internal affairs, internal investigation or public integrity investigation files relating to or connected with each witness who was or is a law enforcement officer.

19. Any and all information concerning whether the government agent, including, but not limited to, agents of the state and federal government and/or local law enforcement in the state, connected with any investigation of defendant, was or might have been involved in criminal conduct himself or was or is under investigation for suspected violations of law, including, but not limited to, unlawful searches, seizures, unlawful entries upon the premises of

citizens, fabrications or suppression of evidence, improper payments or inducements to informers or witnesses, use of threats and the like.

20. Any and all records indicating that a witness has received treatment or has been hospitalized for psychological or psychiatric problems, alcoholism, or drug abuse.

The government has a continuing duty to disclose this information regardless of when it comes to its attention, up to and including trial. Information in the hands of the police is considered in the possession of the government for the purposes of this motion.

C. **MOTION FOR NOTICE BY THE GOVERNMENT OF THE INTENTION TO USE EVIDENCE.**

The government should give defendant notice of its intention to use as evidence in its case-in-chief, admitted or otherwise, any evidence the defendant may be entitled to discovery under Rule 16 and pursuant to Rule 12(d)(1) of the Federal Rules of Criminal Procedure, any evidence that might be subject to motions to suppress. See, Brady v. Maryland (1963) 373 U.S. 83.

Specifically, defendant requests the government to serve specific written notice of:

1. Any and all evidence or information in its possession, custody, or control, or of the existence of which is known, or by the exercise of due diligence could become known to the government and which evidence or information arguably is subject to a motion to suppress evidence or information the government presently or at any time intends, contemplates, or considers using at trial in its case-in-chief, on rebuttal or otherwise.

2. Any and all grounds upon and reasons for which said evidence may be subject to suppression. Specifically, but not exclusively, and without interfering with other defense motions in this respect, the defendant requests the government disclose the circumstances surrounding the

authorization, if any, with respect to the recording and monitoring of oral conversations had between any witness, victim, confidential informants and/or government agents and the defendant, as well as any oral or verbal statements, and/or tangible items seized or taken from the defendant.

Under Rule 12(b)(3) of the Federal Rules of Criminal Procedure, the defendant must raise motions to suppress evidence prior to trial. In order to expedite the preparation for trial and to avoid unnecessary interruptions during trial to hear suppression issues, the defendant calls upon the government to advise the defendant of any specific evidence that is arguably subject to a motion to suppress or motion *in limine*. By such disclosure, the defendant is alerted to the necessity, if it exists, of making same.

The defendant's motion requests notice of evidence "arguably" subject to suppression or exclusion at trial. This is as it should be. If an argument properly can be made, counsel is entitled to the opportunity to make it. Certainly, the attorneys for the government should not sit as judges and decided which issues will be exposed to the adversary process and which will be hidden from it. In deed, the government conceded as much in Alderman v. United States (1969) 394 U.S. 165, where it agreed that surveillance records "arguably relevant" to the petitioner's conviction should be turned over to the trial judge for *in camera* examination, 394 U.S. at 181, and the Supreme Court held that such "arguably relevant" records should be turned over directly to defense counsel, 394 U.S. at 182 and n.15; *cf.* United States v. Agurs (1967) 427 U.S. 97, 114.

The defendant acknowledges the motion is cast somewhat more broadly than the literal terms of Rule 12(d)(2) and requests notice of evidence the government intends to use "in its case-in-chief, rebuttal, or otherwise." Defendant submits the court has the inherent authority to

so order. See, United States v. Richter (9th Cir. 1973) 488 F.2d 170, 173-74.

Furthermore, the defendant contends that "danger of unfair prejudice . . . undue delay, [and] waste of time . . . require pretrial disclosure and resolution of all potential suppression and exclusive issues." See, Fed. R. Evid. 403; (other citations omitted).

This request is manifestly in the interest of judicial economy, is necessary to safeguard the defendant's constitutional rights, and therefore should be granted.

**D.     MOTION FOR A LIST OF GOVERNMENT WITNESSES.**

Pursuant to Rule 16 of the Federal Rules of Criminal Procedure, the fundamental rights accorded by the Due Process Clause of the United States Constitution and this Court's inherent authority over pretrial discovery in criminal matters, defendant moves this Court order the government provide him with the following:

1.     A list of names and addresses of each and every person whom the government intends to call as a witness in the presentation of its case-in-chief in the trial of the above-captioned matter, together with any record of prior felony convictions of, inducements offered to, plea agreements with, immunity agreements with, or benefits accruing to such witnesses;

2.     A list of the names and addresses of each and every unindicted co-conspirator and/or participant in the alleged offense whom the government intends to call as a witness in the prosecution of its case-in-chief in the trial of the above-captioned matter.

///

3.     A list of names and addresses of each and every person who was interviewed or questioned by the government in the course of its investigation into the above-captioned matter whom the government does *not* intend to call as a witness in its case-in-chief at trial;

4.     A list of names, addresses, and telephone numbers of each person whom the

government intends to call at the trial of this case to offer an expert opinion, including translators and/or language experts and specialists, together with a statement of the subject matter upon which each expert is expected to testify, the facts and opinions to which the expert is expected to testify, the qualifications of each expert witness, and a summary of the grounds for each opinion.

///

This Court is empowered to order the government disclose such information. United States v. Richter (9th Cir. 1973) 488 F.2d 170. In determining whether to exercise discretion in ordering the government to provide the defense with a list of the government's witnesses, the court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." Roviaro v. United States (1957) 353 U.S. 53, 62.

The need for disclosure here greatly outweighs any conceivable need for continued concealment by the government.

### E. MOTION TO DISCLOSE WHETHER PHONE CALLS FROM CORRECTIONAL FACILITIES MADE BY ANY DEFENDANT IN THIS MATTER HAVE BEEN MONITORED BY ANY PERSON OR OTHER OFFICIAL AND THE CONTENTS OR SUBSTANCE OF THE SAME DIVULGED TO THE GOVERNMENT.

The government should disclose whether any telephone conversations of defendant or any incarcerated co-defendant have been monitored or recorded by any person since the date of any co-defendant's incarceration and whether the contents or substance of the conversation have been divulged to the government.

As grounds defendant states that conversations made by incarcerated persons are routinely monitored by prison officials. If monitoring has occurred of the conversation of a co-defendant and the substance of the conversation has been transmitted to any member of the prosecution team, defendant's right to prepare a defense and to consult with co-defendants in the preparation of a defense to this indictment has been infringed as has the right of defendants to

consult with counsel in violation of the Fifth and Sixth Amendments to the Constitution.

## F.    MOTION FOR PRODUCTION OF GUIDELINE SENTENCING INFORMATION.

The government should produce guideline sentencing material as follows:

1.    The offense guideline or guidelines the government presently represents is applicable to the charges against defendant;

2.    The base offense level the government presently represents is applicable to the charges against defendant, including a showing of the method by which the government represents the charges should or should not be grouped;

3.    Any aggravating specific offense characteristics the government intends to seek as applicable to the charges against defendant;

4.    Any Chapter Three "adjustments" regarding victim, role, obstruction, or acceptance or responsibility the government presently believes are applicable to this case;

5.    Whether the government intends to take the position the "career offender" provisions of 4B1.3 apply to defendant in this case;

6.    Defendant's prior criminal record, including all judgments of conviction, sentences imposed thereon, all release dates from all committed sentences, and expiration dates of all terms of probation and parole;

7.    The grounds, if any, upon which the government will argue for an upward departure from the applicable guideline range;

8.    The existence of any facts, information, or other evidence that could give rise to an argument for a downward departure from the applicable guideline range, including, but not limited to, the provisions of 4A1.3, 5H, and 5K.

III

<u>CONCLUSION</u>

For the foregoing reasons, defendant respectfully requests, by and through counsel, this Court grant the above motions for discovery and grant to file additional motions.

DATED:   May 19, 2008                              Respectfully submitted,


                                                   _____
                                                   Charles N. Guthrie
                                                   Attorney for Defendant